**Richmond.**

STREET v. BROADDUS.

MARCH 9, 1899.

Absent, Cardwell, J.

1. DEPUTY TREASURERS—*Penalties—Sec. 854 of Code—Interest on Verdict—Affidavits of Jurors.*—The penalties imposed on deputy treasurers by sec. 854 of the Code for failure to collect or pay over taxes are not to be extended by implication. The party seeking to recover such penalties must bring himself strictly within the terms of the section. It is the duty of the jury to ascertain the amount and date of the default, and to render verdict for this sum with the penalty added. Judgment should be rendered for the amount of the verdict with interest at six *per cent. per annum*, as the penalty does not extend beyond the verdict. If there is doubt as to whether the jury imposed the penalty, this doubt cannot be resolved by the affidavits of the jurors, but the verdict will be presumed to be correct.

2. NEW TRIALS—*Verdict—Affidavits of Jurors.*—As a general rule, affidavits of jurors as to the manner in which they arrived at their verdict will not be received, though there may be instances in which they will be received in order to prevent a failure of justice.

Error to a judgment of the Circuit Court of Essex county rendered March 6, 1897, in a proceeding by motion wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Claggett B. Jones*, for the plaintiff in error.

*Thos. E. Blakey* and *W. W. Woodward*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

The plaintiff in error, W. H. Street, treasurer of Essex county, gave notice to Broaddus, his deputy, that he would ask the Circuit Court of Essex county for judgment against him, and his sureties on his bond of indemnity, for certain taxes and levies which, as deputy treasurer, he had collected and failed to account for. Upon the trial, the jury rendered a verdict for $756.55, which the plaintiff asked the court to set aside, upon the ground that the jury should have given ten *per cent.* damages per month for the amount of the deficiency in said taxes and levies from the time payment of them should have been made; secondly, that the verdict was contrary to the law and the evidence. The plaintiff in error also moved the court to enter judgment upon said verdict with ten *per cent.* damages per month from the first of January, 1896, but the court denied all of said motions, and entered judgment upon the verdict as rendered, with six *per cent.* interest thereon, to which rulings of the court the plaintiff excepted, and the case is now before us upon a writ of error to this judgment.

The case is to be considered as upon a demurrer to the evidence, which evidence consists of the testimony of Street, the plaintiff, and of Broaddus, the defendant. With the testimony of Broaddus there appears a statement of the transactions between himself and Street which shows a balance as of January, 1894, of $1,035. He says in his testimony that, in addition to credits claimed in that statement, he had paid the sum of $518.14. Just when the jury applied this latter payment does not appear from the evidence. There is a presumption in favor of the correctness of the judgment of the Circuit Court, and he who seeks to reverse it must show error to his prejudice. The credit of $518 reduces the amount due, according to Broaddus' testimony, to $517, but the record does not enable us to say at what date the jury struck the balance.

Sec. 854 of the Code provides that " if any such deputy shall fail to collect, or, having collected, fail to pay over to his prin-

cipal any taxes or levies which he ought to have collected or may have received, he and his sureties shall be liable to such principal, upon motion, for the amount of the deficiency in said taxes or levies, together with damages thereon, at the rate of ten *per cent.* per month from the time such payment should have been made."

This statute is highly penal in its nature. It is not to be extended by implication, but he who seeks to avail himself of the ruinous penalties which it imposes, must bring himself strictly within its terms. It is clearly for the jury to ascertain the amount of the deficiency, the date when the default occurs, and, upon the balance thus ascertained, to impose damages as provided in the section above cited. Those damages, we think, are to be embraced in the verdict, and upon the verdict it was the duty of the court to enter its judgment with interest at the rate of six *per cent.*, for under the law the damages do not continue after the rendition of the verdict. If that had been its purpose it should have been expressly so provided; it would have been easy to say that the liability should continue until payment, but in that respect the statute is silent, and we cannot extend it beyond its letter.

Looking to the verdict and the evidence only, we cannot say whether or not the jury imposed the penalties denounced by this act from the date when a balance was struck by them against the defendant. As we have seen, there is evidence to support the theory that the principal sum which the defendant failed to pay over was in the judgment of the jury about $517. Their verdict was rendered for $756. It may be that, upon the ascertained deficiency, the damages allowed by sec. 854 were given by the jury. We cannot say with confidence, confining ourselves to the verdict and the testimony, whether this is so or not, because we do not know, we repeat, the date at which the jury struck the balance between the plaintiff and defendant.

It is contended, however, by plaintiff in error that we can look to the affidavits of the jurors to show that damages

were not allowed.   There may be occasions when, in order to prevent a failure of justice, it is proper to consider the affidavits of jurors as to the manner in which they arrived at their verdict, but the general rule, as established by the decisions of this court, is otherwise, nor does this case come within any of its exceptions.

In *Bull's Case,* 14 Gratt. 613, Judge Moncure reviews at large the authorities touching this question, and shows, in the language of Chief Justice Hosmer in *State* v. *Freeman,* 5 Conn. 548, "the opinion of almost the whole legal world is adverse to the reception of the testimony in question, and on invincible foundations."

"It seems to be universally agreed," says the court, in *Johnson* v. *Davenport,* 3 J. J. Marsh. 390, "that such affidavits, if received at all, should be with great caution, and their admissibility should be confined to cases of mistake clearly made out, and which may be conceded as true, without subjecting the jury to any imputation of impure motives, or palpable impropriety of conduct."

Now it is to be observed just here, that, in the case before us, while the jurors do say that they made no allowance in their verdict for damages, it is nowhere suggested that the failure to do so was the result of any mistake on the part of the jury or any member of it.

In *Cochran* v. *Street,* 1 Wash. 79, the court permitted affidavits to be read, "as it was clear that the verdict was found under a mistake," and the court awarded a new trial, but, says Judge Moncure, in *Bull's Case, supra,* p. 630, "that case was decided in 1792, when the practice was more unsettled than it now is.   Since then, the tendency of judicial opinion has been more and more in favor of the exclusion of such testimony.   Whether, if that were a new case, it would now be decided in the same way, is at least a doubtful question."

In *Koiner* v. *Rankin's Heirs,* 11 Gratt. 420, Judge Lee says: "The leaning of the courts of most approved authority is

Opinion.

against the practice of grounding motions for new trials upon them; and a disposition has been manifested greatly to restrict the class of cases in which, upon such affidavits, new trials will be allowed."

Continuing, Judge Moncure, in *Bull's Case, supra,* uses the following language: "In view of all the authorities, and of the reason on which they are founded, we think that, as a general rule, the testimony of jurors ought not to be received to impeach their verdict, especially on the ground of their own misconduct. And, without intending to decide that there are no exceptions to the rule, we think that, even in cases in which the testimony may be admissible, it ought to be received with very great caution. A contrary rule would hold out to unsuccessful parties and their friends the strongest temptation to tamper with jurors after their discharge, and would otherwise be productive of the greatest evils."

*Bull's Case* may be considered as settling the law in Virginia. It has since been frequently referred to, and always with approval.

We are of opinion that the plaintiff in error has failed to show any error to his prejudice in the judgment of the Circuit Court, which is therefore affirmed.

*Affirmed.*