# Richmond.

## Manor and Others v. Hindman.

November 14, 1918.

Absent, Sims, J.

1. SALES—*Interpretation and Construction—Construction by Parties.*
—The construction put upon contracts of sale by the parties
themselves is accepted by the courts where it does no violence
to the language used.

2. SALES—*Time of Delivery—Delivery on Installments.*—Plaintiff
bought of defendants, who owned a flour mill at which they
manufactured and sold large quantities of flour, 1,800 barrels
of flour in October and November, 1914, for November and De-
cember delivery. It was· understood by the parties that the
purchaser intended to solicit buyers for the flour at a profit to
himself in the territory near his place of business, and that
the orders to ship directly to these buyers would be sent in to
the sellers after such sales were made, together with proper
specifications as to the size of the packages in which the flour
was to be shipped. Under this contract, 902 barrels of flour
were ordered and shipped, and on December 30th and 31st, the
purchaser sent in to the sellers the specifications for 898 barrels,
the balance due on the contract. The sellers declined to ship,
and claimed that under the contracts they had the right to
insist that the specifications should be received by them in suffi-
cient time to enable them to manufacture and ship the flour
on or before the 31st day of December.

   *Held:* That while it is doubtless true that if the sellers had claimed
that their facilities were so limited that it was impossible to
deliver 898 barrels of flour on the 30th and 31st of December,
they should have been allowed a reasonable time in which to
make such delivery, their claim that they had a right to time
to manufacture the flour is untenable. They had sold the flour
under the circumstances mentioned, and it was their duty to
have it ready for delivery whenever it was called for during
the months of November and December.

3. APPEAL AND ERROR—*Affirmance.*—In the instant case the trial
court permitted each of the witnesses (the purchaser and a
witness for the seller) to give to the jury his construction of

the meaning of the term "ordering out," and used in the contract of sale, and instructed the jury in accordance with that evidence. The jury found a verdict in favor of the purchaser, and under the demurrer to the evidence rule the verdict will not be disturbed by the Supreme Court of Appeals, unless there was some error to the prejudice of the sellers committed during the trial.

4. PARTNERSHIP—*What Constitutes—Share of Profits.*—Where an employer had two clerks who were paid salaries and in addition to this were allowed a share of the net profits, in case the concern should earn such profits, but were in no event liable for any losses, there was no partnership between the employer and the clerks. The contingent interest of the clerks in the net profits was merely a means of measuring their salaries.

5. SALES—*Damages—Loss of Profits by Purchaser.*—If at the time a contract of sale is made, the seller has notice or knowledge that the goods are being purchased for resale in a particular market, or to be supplied in pursuance of a particular contract, he may fairly and reasonably be deemed to have made his contract in contemplation of that purpose, and to have assumed the risks thereby entailed, and, if he breaks his contract, damages for losses caused thereby, if not uncertain or remote, may be recovered.

6. SALES—*Damages—Loss of Profits by Purchaser.*—It is sometimes objected that a loss of profits is not a proper subject of compensation, and this is often true. It is not, however, because profits in themselves may not, if lost, be properly made the basis of a recovery, but because in most cases in which such a claim is made the profits in question are too speculative, uncertain or remote to be considered. Where, on the other hand, the loss of profits can be shown with reasonable certainty, a recovery may be had for the amounts so lost.

7. SALES—*Damages—Loss of Profits by Purchaser.*—A buyer who in the circumstances set out in syllabus 5, has made a subcontract, is entitled to obtain and supply the article which his vendor has failed to furnish under his contract, and if he is compelled to pay a higher price for the substitute thus procured, he may recover as damages the difference between what he was to pay for the original article and what he is thus compelled to pay for the substitute.

8. VERDICT—*Correction.*—It is the duty of the trial courts to require the verdicts of juries to be put in approved form in order to effectuate their true intent and meaning, and hence where the jury reported a verdict written upon a piece of paper in the following words: "We, the jury, find for the plaintiff and fix the damages due by the defendant to be

twelve hundred dollars," there was no error where the verdict was in open court written upon the declaration and signed by the foreman in these words: "We, the jury, find for the plaintiff on the issues joined, and fix his damages at twelve hundred dollars."

9. JUDGMENTS AND DECREES—*Codefendants—Partial Invalidity.*—A judgment against a party who was not served with process and against whom the suit had abated is void as to her but not as to her codefendants, as it is an error that can and should be corrected under section 3451 of the Code of 1904.

10. NEW TRIAL—*Misconduct of Jury—Affidavits of Jurors.*—Affidavits of jurors as to misconduct of the jury are received with great caution, and only in exceptional cases and in order to prevent a failure of justice. In the instant case, which was one of a quotient verdict, there was nothing in the record to take the case out of the established rule.

Error to a judgment of the Circuit Court of Shenandoah county, in an action of assumpsit. Judgment for plaintiffs. Defendant assigns error.

*Amended and Affirmed.*

The opinion states the case.

*M. L. Walton* and *Geo. N. Conrad,* for the plaintiffs in error.

*Sipe & Harris* and *Tavenner & Bauserman,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The controlling facts of this case (omitting many matters of detail which appear to us to be inconsequential) are: That C. C. Hindman, trading as C. C. Hindman & Co., of Greenville, S. C., bought of the Harrisonburg Milling Company, a partnership composed of J. D. Manor, Blanch B. Manor, Marguerite L. Haywood and Shirley M. Sebrell,

who owned a flour mill at which they manufactured and sold large quantities of flour, eighteen hundred barrels of flour in October and November, 1914, for November and December delivery. The negotiations and sales, evidenced by telegrams and letters, show that there were four sales, three of five hundred barrels each and one of three hundred barrels. It was well understood by the sellers that the purchaser intended to solicit buyers for the flour at a profit to himself in the territory near his place of business in South Carolina, and that the orders to ship directly to these buyers would be sent in to the sellers after such sales were made, and that proper specifications as to the size of the packages in which the flour was to be shipped, should be furnished. Operating in this way, 902 barrels of flour were ordered and shipped including the order of December 28th, 1914, leaving at that time 898 barrels due upon the contracts to the purchaser. On December 30th and 31st, the purchaser sent in to the sellers the specifications for these 898 barrels. The sellers declined to ship, and claimed that under the contracts they had the right to insist that the specifications should be received by them in sufficient time to enable them to manufacture and ship the flour on or before the 31st day of December. The substance of the controversy then is whether, under such contracts as have been described, the purchaser had the right to take the entire month of December in which to send in his orders with specifications.

One of the accepted rules is, that the construction put upon such contracts by the parties themselves is accepted by the courts where it does no violence to the language used. In this case, by letters dated November 6, 13 and 24, the sellers emphasize the fact that all of the flour is to be ordered out by December 31, 1914, and that all not so ordered out would be cancelled. It was not, however, until the letter dated December 31, 1914, that the sellers claimed specifi-

cally that it was the duty of the purchaser to get specifications as to the size of the packages to them in time for them to manufacture and ship during the months of November and December.

There were only two witnesses, the purchaser and J. B. Manor, acting for the sellers. They were both permitted to testify as to the proper meaning to be attached to the words "ordering out" the flour, according to the custom and usage of the trade. The purchaser testified that "ordering out" meant sending in specifications for the flour, and that he had until the 31st of December under his contracts to send in such specifications, while the witness for the sellers testified that it meant that the shipper of the flour was entitled to have the specifications in time to enable the mill to ship the flour on or before the 31st of December.

One test to be applied to this contract is to inquire what would have been the obligation of the purchaser in case he had not sent in any specifications on or before the 31st day of December. As to this there can be no doubt whatever that he could not have taken advantage of his own failure to send in the specifications, and had the market price for flour depreciated so as to make it profitable to the sellers to require him to take all of the flour, he could have been held responsible to the sellers for the entire purchase price, and his failure to send in specifications would not have relieved him from the obligations of his contracts. A case like that where the seller sued the purchaser who had failed to send in shipping directions within the time required by the contract is *Louisville &c. R. Co.* v. *Diamond State Iron Co.*, 126 Ill. 294, 18 N. E. 735, in which the purchaser was held liable under his contract. A case quite similar to this is *Tyers and others* v. *The Rosedale & Ferryhill Iron Co., Ltd.*, 10 Law Rep. Ex. 195, in which the purchaser sued the sellers. There the sellers contracted to sell 2,000 tons of iron to be delivered during 1871 or sooner, in equal monthly

quantities. In January 101 tons were delivered. Then the purchaser requested the sellers not to deliver more iron under the contract, and after that only partial deliveries were made up to and including November. Then in December the purchaser required the delivery of the residue of the whole 2,000 tons. The sellers refused to deliver and claimed that they were only liable to deliver such as was due on the monthly balance. The trial court decided that the purchaser could not require such delivery of the residue in December, and that the purchaser was therefore not entitled to recover; but the appellate court reversed the judgment in favor of the purchaser, saying, however, that they were probably entitled to a reasonable time in which to deliver the residue of the 2,000 tons.

So here it is doubtless true that if the sellers had claimed that their facilities were so limited that it was impossible to deliver 898 barrels of flour on the 30th and 31st of December, they should have been allowed a reasonable time in which to make such delivery. Their claim that they had a right to time to manufacture the flour is untenable. They had sold the flour under the circumstances mentioned, and it was their duty to have it ready for delivery whenever it was called for during the months of November and December. We may, we think, assume that there are standard packages of flour, and that in accordance with the custom of the business manufacturers of flour in large quantities have these packages on hand ready to fill orders which they are under contract to fill, and that reasonable time in which to assort and ship these packages after the specifications are sent in, is all the time to which the seller is fairly entitled.

The trial court permitted each of the witnesses to give to the jury his construction of the meaning of the term "ordering out" and instructed the jury in accordance with that evidence. The jury found a verdict in favor of the pur-

chaser, and under the demurrer to the evidence rule it will not be disturbed by this court, unless there was some error to the prejudice of the appellants committed during the trial.

There were several exceptions as to the admission and rejection of testimony. It is sufficient to say, as to those, that they present no novel questions, and a discussion of the points raised would serve no good purpose. No testimony was admitted which the purchaser was not entitled to have considered by the jury, and none rejected which was tendered by the sellers which could have properly changed the result.

Much is said in the record as to one of the orders for 500 barrels of flour, referred to as the "Wright order." It appears that the purchaser desired the sellers to book or sell 500 barrels of flour to D. C. Wright, Belton, S. C. The sellers at first refused to do so and there ensued correspondence by letter and telegram which is obscure in its meaning. There are clauses in the correspondence which support the contention that this flour was sold directly to Hindman, the appellee, as well as clauses indicating a sale to Wright, but the general tenor of the correspondence supports the contention of Hindman that the sellers refused to confirm any sale to Wright, and held him, Hindman, responsible as the purchaser of this 500 barrels of flour, saying in their letter of November 10th, "It was not up to us to confirm the sale to Wright;" and the final confirmation of this view is found in the letter from Hindman, the purchaser, to the sellers of the 22nd of December, in which he directs 200 barrels of the flour to be applied to Wright's contract, but shipped at once to the Blue Ridge Grocery Co., of Pelser, S. C. This letter was introduced by the sellers, and there is nothing in the record to indicate that they disclaimed the right of the purchaser thus to control and direct the disposition of this portion of the flour.

It is claimed that Hindman had no right to maintain the action in the name of C. C. Hindman & Co., upon the ground that he had co-partners. The evidence fails to sustain this proposition. He had two clerks who were paid salaries and in addition to this were allowed a share of the net profits, in case the concern should earn such profits, but they were in no event liable for any losses. Their contingent interest in the net profits was merely a means of measuring their salaries. *Jackson* v. *Haynie*, 106 Va. 365, 56 S. E. 148; *Tyler* v. *Jeter*, 75 W. Va. 217, 83 S. E. 906.

Complaint is made that the purchaser was allowed to testify as to his loss because of the sellers' failure to supply the flour which he was under obligation to supply to his customers under contracts which he made on the faith of his contracts with the sellers. The rule in such case appears to be perfectly well settled, and is thus stated in 2 Mechem on Sales:

"Sec. 1763. If, however, at the time the contract is made, the seller has such notice or knowledge that the goods are being purchased for resale in a particular market, or to be supplied in pursuance of a particular contract, that he may fairly and reasonably be deemed to have made his contract in contemplation of that purpose, and to have assumed the risks thereby entailed, then, if he breaks his contract, damages for losses caused thereby, if not uncertain or remote, may be recovered." Citing many authorities.

"Sec. 1765. It is sometimes objected that a loss of profits is not a proper subject of compensation, and this is often true. It is not, however, because profits in themselves may not, if lost, be properly made the basis of a recovery, but because in most cases in which such a claim is made the profits in question were too speculative, uncertain or remote to be considered. Where, on the other hand, the loss of profits can be shown with reasonable certainty, it has been settled, since the case of *Masterton* v. *Mayor of Brook-*

*lyn,* 7 Hill (N. Y.) 61, 42 Am. Dec. 38, that a recovery may be had for the amounts so lost."

The buyer in such circumstances, who has made a sub-contract, is entitled to obtain and supply the article which his vendor has failed to furnish under his contract, and if he is compelled to pay a higher price for the substitute thus procured, he may recover as damages the difference between what he was to pay for the original article and what he is thus compelled to pay for the substitute. 2 Mechem on Sales, sec. 1768.

No evidence in contravention of this rule was admitted by the trial court.

Exception is taken because the jury reports a verdict written upon a piece of paper in the following words: "We, the jury, find for the plaintiff and fix the damages due by the defendant to be twelve hundred dollars:" whereupon the verdict was in open court written upon the declaration and signed by the foreman in these words: "We, the jury, find for the plaintiff on the issues joined, and fix his damages at twelve hundred dollars." It is the duty of the trial courts to require the verdicts of juries to be put in approved form in order to effectuate their true intent and meaning, and hence there is no merit in this exception. Indeed, if the verdict as originally drawn had been accepted by the court, the same result would have followed, for it would have been considered as responsive to the issue which the jury had been sworn to try.

The action was originally instituted against J. D. Manor, trading under the name of Harrisonburg Milling Company and J. D. Manor and Company. At the next term J. D. Manor filed a suggestion that the Harrisonburg Milling Company was a partnership composed of himself, Blanch B. Manor, Marguerite L. Haywood and Shirley M. Sebrell, and by consent the case was remanded to rules and process directed to issue, and no further allusion appears to J. D.

Manor & Company. The new process accordingly issued and was executed upon each of the members of the partnership except Marguerite L. Haywood, as to whom the suit abated. Then at the next term a plea of *non assumpsit* was filed on behalf of J. D. Manor, Blanch B. Manor and Shirley M. Sebrell, upon which plea issue was joined, and this was the only issue submitted to the jury. It appears, however, that the judgment was entered against J. D. Manor, Blanch B. Manor, Shirley M. Sebrell and Margaret L. Haywood, parties trading as Harrisonburg Milling Company. This judgment, so far as it affects Margaret L. Haywood, is void because no process had ever been served upon her and the suit had abated as to her. This, however, is an error that can and should be corrected under section 3451 of the Code. *Goode* v. *Bryant,* 118 Va. 327, 87 S. E. 593. The judgment will, therefore, be amended so as to omit any recovery against Margaret L. Haywood.

After the jury had been discharged, the purchaser moved to set aside the verdict upon the ground of misconduct on the part of the jury, and filed an affidavit of one of the jurors to the effect that the jury made an agreement among themselves that each should set down the amount to which he considered the plaintiff entitled to a verdict, and the sum of these amounts should be divided by the number of jurors and the result thus secured should be the verdict to which all would assent and agree, and that this plan was carried out by the jury, and the verdict rendered in the case was arrived at by this plan. This is supported by an affidavit of M. L. Walton, Jr., to the effect that in looking over the papers in the action he observed the following figures written on the papers of the said suit: 7—8400

1200.

It has long been settled in Virginia that such affidavits are received with great caution, and only in exceptional

cases and in order to prevent a failure of justice. The record discloses nothing which takes this case out of the established rule. *Koiner* v. *Rankin's Heirs,* 11 Gratt. (52 Va.) 431; *Bull's Case,* 14 Gratt. (55 Va.) 613; *Street* v. *Broaddus,* 96 Va. 823, 32 S. E. 466; *Johnson* v. *Davenport,* 3 J. J. Marsh (Ky.) 390.

The case presents difficulty, but the controversy has been submitted and determined in the method prescribed by law, and we find no reversible error in the proceedings.

*Amended and Affirmed.*