Syllabus.

## Staunton.

## F. M. Clevinger, et als., v. County School Board of Buchanan County, et als.

### September 18, 1924.

1. Commissioner's Report—*Weight to be Attacked to Report.*—Notwith-standing the weight due to a commissioner's report and the respect which is accorded his findings, neither the trial court nor the Supreme Court of Appeals should avoid the duty of weighing the evidence when its sufficiency is fairly challenged.

2. Judgments and Decrees—*Setting Aside Judgment—Judgment not Supported by the Evidence.*—Neither in the trial court, nor upon appeal, should any judgment stand if the record shows that it is unsupported by the testimony.

3. Counties—*Action by County Against Former Treasurer—Commissioner's Report.*—In a suit by a county against a former treasurer, and the sureties on his official bond, it appeared that the defendant's successor in office had given a receipt for tax tickets aggregating $51,-854.12. The commissioner appointed by the cour reported that, having in every instance of doubt resolved the doubt in favor of the defendant, he found that the gross amount of tax tickets delivered by defendant to his successor was $42,130.72.

   *Held:* That the commissioner's report shows that he investigated every item in the account with the most painstaking care, and under the evidence submitted, his findings were all established to a moral certainty.

4. Counties—*Action by County Against Former Treasurer—No Claim for Penalty in Trial Court—Case at Bar.*—In a suit by a county against a former treasurer and his sureties on his official bond for failure to, turn over funds to his successor, it was claimed that the court erred in not adding to the sum found due the county, damages at the rate of ten per cent per month as provided by sections 2787 and 2789 of the Code of 1919. This statute is highly penal in its nature, and in the instant case would aggregate about 450 per cent. No claim was made for the penalty, so far as the record showed, in the trial court. Upon the part of the sureties, the defense was made in good faith, and to impose such a penalty upon them would be so harsh as to shock the conscience and to be intolerable.

   *Held:* That the court did not err in omitting the penalty from its decree.

Appeal from a decree of the Circuit Court of Buchanan county. Decree for complainant. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Daugherty & Barrett* and *A. A. Skeen,* for the appellants.

*H. Claude Pobst, Greever & Gillespie, Williams & Combs,* and *Sutherland & Sutherland,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

This is a suit in equity against Clevinger and his sureties on his official bond as treasurer of Buchanan county. He retired from office December 31, 1919, and was succeeded by A. C. Stacy, January 1, 1920. His duty to account for all funds collected and to deliver to his successor in office all books and papers, including all uncollected tax tickets, is imposed by statute. Pursuant to the statute, in January, 1920, Clevinger undertook to make the proper settlement with the supervisors and with his successor in office. The incoming treasurer upon that settlement gave the required receipts for the amounts apparently due and for the uncollected tax tickets. According to Clevinger and some of his witnesses, the settlement was carefully made and the errors, if any, were inconsequential. According to the complainants, the errors were serious, especially in that in the settlement Clevinger took improper credit for several thousand dollars, represented by orders exonerating certain taxpayers from taxes illegally assessed, and instead of delivering about $51,000.00 in uncollected tax

tickets, as the receipt stated, the tickets actually turned over aggregated only about $41,000.00.

The record is voluminous, but presents no doubtful question of law. The decree from which this appeal was taken adjudged Clevinger to be indebted to the county on its general fund, as well as for county and district road and school funds, respectively, the aggregate of the several items thereof being $14,756.46. This decree was based upon a commissioner's report, made by Hon. M. P. Farrier, which shows that he reached his conclusions after the most painstaking care, investigation and consideration of the evidence presented.

For the appellants it is insisted that the settlement between Stacy and Clevinger was final, and that the burden of showing error therein is upon the complainants; that they are barred by laches, and that the evidence fails to support the commissioner's findings and the decree based thereon.

The only error alleged is expressed by a single exception to the commissioner's report in this language: "The defendants object and except to this report because contrary to the law and the evidence; against the weight of the evidence, and without sufficient evidence to support it." The assignment of error in the petition for appeal is in these words: "Petitioners insist that the court erred in overruling petitioners' exception to the commissioner's report, and in entering judgment thereon."

For the appellees it is insisted that this exception was and is too general, and invoke the elementary rule of equity procedure, that exceptions to a master's report must point out specifically the error or errors relied on by the exceptant; and also that an assignment of error here must be far more specific than that just quoted.

That the appellees' contentions rest upon well estab-

lished rules cannot be gainsaid, and they are so clearly applicable to the question presented that we should doubtless be justified in affirming the judgment because the alleged error has not been sufficiently assigned.

[1, 2] It is fundamental, however, that notwithstanding the weight due to a commissioner's report and the respect which is accorded his findings, neither the trial court nor this court should avoid the duty of weighing the evidence when its sufficiency is fairly challenged. Neither in the trial court, nor here upon appeal, should any judgment stand if the record shows that it is unsupported by the testimony.

[3] This record discloses for the appellants only the insistence of Clevinger and his assistants, at the settlement, that the tax tickets were accurately listed; that there was no substantial error committed, and that the complainants have failed to sustain the burden of showing any such error by clear and convincing testimony. On the other hand, it is shown for the complainants that they had little or nothing to do with the listing of the unpaid tax tickets; that as soon as their suspicions were excited the deputy treasurer, Mullins, holding under Stacy, made a careful investigation and reached the conclusion that instead of having received tax tickets aggregating $51,854.12, as stated in the receipt, only about $41,726.07 had actually been received by Stacy. Then, in the spring of 1921, the board of supervisors had an understanding with Clevinger that the records which would disclose the truth should be examined by the firm of Williams & Combs, attorneys, who were to represent the supervisors, and by Mr. W. A. Daugherty, who was Clevinger's attorney; but they could never agree upon a time for such examination. Failing in this, Williams & Combs, assisted by another well known attorney, H. Claude Pobst, who was employed by Stacy, made such

·an examination, and they concluded that the aggregate of these tax tickets did not exceed $41,735.74. Thereafter the board of supervisors employed Pullen, Henderson & Company, who are certified public accountants, to investigate and report for the purpose of ascertaining the truth, and they reached the conclusion that the total amount of unpaid tax tickets delivered to Stacy by Clevinger was $41,409.88. It is thus seen that all of these investigators reached substantially the same conclusion upon this point—that is, that Stacy had receipted for approximately $10,000.00 in tax tickets in · excess of the gross amount of such tickets which he had actually received. The discrepancies are not very significant and do not discredit the results when it is observed that there were more than 2,500 separate tickets of individual taxpayers which were under review and that there were a number of credits upon some of these tax tickets which had been noted upon the stubs from which the tickets either were at the time or had thereafter been detached from such stubs when the several taxpayers paid the balances due. Some of the items entering into the account are definitely fixed—that is, the land and property books made out by the commissioner of the revenue show the total amount of taxes as well as the separate items due by each taxpayer, and with this gross amount the treasurer is charged. Against this item of debit of course the receipts for money which the treasurer has either accounted for, or paid out to those entitled thereto, constitute items of credit easily shown by him. Unascertained items in this account grew out of the fact that it was the custom of taxpayers to make partial payments on their tax tickets, and these partial payments were entered upon the stubs left in the books from which the tickets were subsequently taken, when thereafter paid in full. Upon many of these tax tickets

so delivered by Clevinger to Stacy, there were a number of credits, and about these credits there was controversy. The commissioner reported, however, that in every instance of doubt he resolved that doubt in favor of Clevinger, and that he only charged Clevinger with payments which had been made by taxpayers either directly to him or directly to one of his deputies; and that the only proof which he accepted to establish such payments was their own signatures, or initials, upon the stubs of the tax tickets. The commissioner, after having resolved all of these doubts in favor of Clevinger, found that the gross amount of tax tickets delivered by Clevinger to Stacy was $42,130.72.

The other items allowed against Clevinger are equally well established and consist chiefly of certain exoneration orders for which he had been allowed credit in the settlement with Stacy, for which he had already received credit in previous settlements.

As has been indicated, the commissioner's report shows that he investigated every item in the account with the most painstaking care, and under the evidence submitted, his findings are all established to a moral certainty.

[4] A cross-error is assigned, and it is claimed that upon the sum found due, $14,756.46, there should be added damages at the rate of ten per cent per month, from January 1, 1920, until October 12, 1923, the date of the final decree, and then interest on the total from the date of the final decree until paid.

The statute upon which this is based was adopted in the public interest to enforce prompt accounting for public funds by public officials. It is highly penal in its nature, and in this case would aggregate about 450 per cent. No claim was made for it, so far as the record shows, in the trial court. Upon the part of the sureties,

certainly, the defense has been made in good faith, and to impose such a penalty upon them would be so harsh as to shock the conscience and be intolerable. As indicated in the case of *Street* v. *Broaddus*, 96 Va. 825, 32 S. E. 466, which was based on a claim against a deputy sheriff, which was submitted to a jury, it seems that the penalty should have been called to the attention of the jury and claimed before verdict, because such damages should be included in the verdict. So here, if it had been intended to make such a claim, it should have been promptly asserted in the trial court. In *Powers* v. *Hamilton*, 117 Va. 817, 86 S. E. 98, this rule is enforced, and it is said that such penalties are chiefly for the purpose of holding such officials to strict account, and for the benefit of the public service.

Our conclusion is to affirm the decree.

*Affirmed.*