# Richmond.

## Nora Coal Corporation v. M. T. McArthur.

November 15, 1928.

REHEARD STAUNTON.

September 19, 1929.

262

The opinion states the case.

*J. W. Flannagan, Jr.,* for the plaintiff in error.

*A. A. Skeen* and *Sells, Simmonds & Bowman,* for the defendant in error.

WEST, J., delivered the opinion of the court.

This is a writ of error to a judgment in favor of M. T. McArthur against Nora Coal Corporation for the sum of $9,116.12, with interest from September 1, 1924, subject to a credit of $2,496.17, and costs.

On June 15, 1923, M. T. McArthur entered into a written contract with Nora Coal Corporation, whereby he agreed to construct for the corporation 3½ miles of railroad from a siding on the C. C. & O. railway, near Nora station, to its coal mine on McClure river, in Dickenson county, Virginia.

On December 7, 1923, McArthur entered into a second contract with the Nora Coal Corporation to extend the railroad for a distance of 1½ miles from its mine to the "Irvine and Kelly Lease."

On February 7, 1924, McArthur entered into a third contract with the Nora Coal Corporation to lay the rails and spread the ballast, etc., on the bed of the railroad built under the two contracts above mentioned. Each of the last mentioned contracts is also in writing.

M. T. McArthur completed the work called for under the contract of June 15, 1923, in September, 1924, nine months after the date of completion provided for in the contract. Upon completion George A. Kent, who had been selected as chief engineer of the corporation, found that the Nora Coal Corporation, the defendant in the lower court, owed the plaintiff, M. T. McArthur, $2,952.44. McArthur refused to accept this sum in settlement of amount due him, claiming that he was entitled to pay for the actual yardage removed at sixty cents per cubic yard, and that the estimate made by George A. Kent, chief engineer, contained only "the yardage to the neat or prescribed sections as staked out, plus slides and slips which were in his opinion unavoidable."

Being unable to agree, the parties undertook, as provided in the contract, to arbitrate all matters in dispute. · After the evidence was taken, but before the arbitrators rendered their decision, McArthur, being unable to obtain a measurement of the yardage, or the engineer's ground line notes which would enable the contractor to make a measurement, withdrew from the arbitration and filed this suit, which, as already appears, resulted in a verdict and judgment in favor of the plaintiff for $9,116.92, subject to·a credit of $2,496.17.

Practically all the questions in controversy in this suit arise under the contract of June 15, 1923, which the court is called upon to construe. For convenience,. the sections relied on by the parties to sustain their respective contentions as to the true meaning of the contract appear in the foot note.* The entire contract appears in the record at pages 46-62, inclusive.

---

*"4. · The corporation agrees to estimate monthly the value of the material, supplies and labor delivered and· performed by the contractor,. which under this agreement the corporation is liable for, and to pay to the contractor monthly, on or before the 10th day of the month succeeding the month in which such materials and supplies are delivered and labor performed, the amount thereof, first deducting from said amount ten per cent (10 per cent) thereof, which is by agreement of the parties to be retained,. by the corporation guaranteeing the complete performance of this agreement by the contractor.

"5. Upon the completion of said work, according to the plans and specifications contained in this agreement, and within ten (10) days thereafter, the chief engineer of the corporation shall give to the contractor a certificate showing the completion of said work according to the plans and specifications herein contained, and the acceptance of said work by the· corporation and within thirty days from the date of said certificate the balance due the contractor for said work, including the total amount of· percentage upon monthly estimates retained by the corporation as hereinbefore provided, shall be paid to the contractor.

"6. In the event the contractor fails to comply with the directions and. supervision of the chief engineer of the corporation with respect to said. work, or the details of the same, the corporation shall have the right to· cancel this agreement after five (5) days' notice to the contractor; any controversies arising from such cancellation shall be determined by arbitration.

"7. It is expressly agreed by and between the contractor and the corporation that all controversies of every character arising in connection:

Plaintiff in error (defendant in the lower court) alleges that the court erred:

1. "In giving over the objection of the defendant plaintiff's instructions Nos. 5 and 6."

2. "In refusing to give the instruction offered by the defendant, as shown in certificate No. 5."

3. "In refusing to give defendant's instruction No. 2, as offered, and in changing and modifying said instruction and giving same as changed and modified."

4. "In giving, without being requested by either the plaintiff or defendant, instruction 'A.' "

5. "In refusing to exclude the evidence of witness J. H. Thomas and all drawings and measurements made by him, and in allowing witness Thomas to introduce certain cross section sheets and to testify from his measurements and cross section sheets the total yardage removed on the three and one-half miles."

---

with this agreement, or in connection with the work to be done hereunder shall be submitted to arbitration. Each of the parties to this agreement shall select an arbitrator and the two arbitrators thus selected shall select a third, and the three so selected shall compose the board of arbitration. The arbitrators may require each of the parties, upon three days' notice, to file in writing a statement of the matters and things in controversy. After five days' notice to each of the parties the arbitrators shall proceed to hear evidence, and make such investigation as may be useful or necessary, and thereafter, and within thirty days, to determine all controversies. A majority of the arbitrators shall determine all questions. The award of the arbitrators shall be made in writing, and a copy thereof shall be delivered to each of the parties to this agreement. The costs of said arbitration shall be disposed of by the award in such manner as the arbitrators shall determine."

"14. The railroad will be graded for single track, except otherwise directed, but the engineer shall have full power to change any part, portions, or whole of the railroad from single to double track roadway construction at any time after the signing of this contract, it being expressly understood that the prices named for the performance of this work are to govern and to be taken and considered as full compensation for all the various kinds of work determined by actual measurement, herein agreed to be performed, whether the railroad be constructed for single or double track, or whether at any time after the signing of this contract any changes of this nature should be made affecting the widths of the roadbed or the volume of the work."

6. "In refusing to permit witness James W. Gerow, a witness introduced by the defendant, to state that after the completion of the work by the plaintiff and prior to the survey made by Thomas, the defendant removed about 8,000 yards of slides at a cost of $5,-731.60."

7. "In permitting witnesses J. H. Thomas and Carroll Speights to testify, over the objection of the defendant, to the usual custom in measuring yardage, when the written contract under which the yardage was removed provides how the yardage should be measured and provides that no constructive or conventional measurement will be allowed."

8. "In permitting the plaintiff, who was introduced as a witness in his own behalf, and witness Carroll Speights to testify, over the objection of the defendant,

"16. All grading except otherwise specified, whether for cuts or fills, will be measured and paid for in excavation only. Excavation will be unclassified and so bid and paid for."

"26. All slides and falls from sides of cutting outside the limits of slope stakes will be paid for at the contract price for excavation, when in the judgment of the engineer they are unavoidable, and the contractor is, therefore, entitled to compensation for their removal. All slides and falls from the sides of cuttings which in the judgment of the engineer are caused by the excessive use of explosives or for any other cause for which the contractor is responsible, must be removed at his expense. The contractor must use every effort to take out or excavate material to the neat section as staked out by the engineer; and no material taken out of the cuttings outside of the prescribed section, except slides or falls unavoidable in the judgment of the engineer, will be paid for and no claims therefor will be entertained. The excessive use of explosives in removing excavations will not be permitted."

"72. No constructive or conventional measurement will be allowed, any rule or custom in the section of the country through which the road passes notwithstanding."

"77. The contractor must carefully preserve all bench marks and stakes, and in case of wilful or careless neglect there shall be charged whatever the said chief engineer shall consider an equitable amount to cover any damage arising from such negligence. All excavations or embankments shall conform to the lines and stakes set out by the engineer."

"79. Whenever the word 'engineer' is used in these specifications it refers to the regularly appointed engineer in the various positions of principal assistant engineer, engineer in charge, or inspector of the Nora Coal

as to what per cent of the yardage removed was rock and what per cent was dirt, as the yardage was removed under a written contract which provided that all excavation is unclassified and so bid and paid for, and in refusing to exclude all evidence relative to what per cent of the yardage removed was rock and what per cent was dirt."

9. "In refusing to exclude the evidence relative to laying the track pursuant to contract of February 7, 1924, as neither said contract nor the work done thereunder was involved, in any way, in this action."

10. "In overruling the motion of the defendant to set aside the verdict of the jury, because the jury, in figuring the verdict, made a mistake."

11. "In not sustaining defendant's motion to set aside the verdict of the jury and enter judgment for the defendant."

---

Corporation in charge of the particular work and to no other employee of the Nora Coal Corporation. Whenever the word 'chief engineer' is used, it is intended that the chief engineer shall have the sole and exclusive jurisdiction of the subject.

"80. It is understood and agreed by and between the parties hereto that the work included in this contract is to be done under the direction of the chief engineer of the said corporation, and that his decision as to the true construction, meaning and effect of all drawings and specifications shall be final. Any corrections or errors or omissions in the drawings and specifications may be made by the said chief engineer when such corrections are in his judgment necessary to the proper fulfillment of the work, or of his intentions. It is also understood and agreed by and between the parties hereto that such additional drawings and explanations as may be necessary to detail and illustrate the work to be done may be furnished by the chief engineer, and the contractor agrees to conform and to abide by the same.

"It is further understood and agreed by the parties hereto that any and all drawings and specifications prepared for the purpose of this contract by the engineer are and remain the property of the corporation.

"81. It is agreed and understood that the corporation in event it decides, at any time before the work herein provided for is completed, to extend its branch railroad to the Kelly and Irvine lease, a distance of approximately one and one-half (1½) miles further than the three and one-half (3½) miles herein provided for, the contractor will construct same at the same price and stipulations as are hereinbefore set out in this agreement, and it is further agreed and understood that if the corporation elects to

12. "In entering judgment for the plaintiff."

Assignments of errors Nos. 1, 2, 3 and 4 relate to the giving and refusing of instructions, and will be considered together.

The instructions involved read as follows:

"5. The court instructs the jury that if they believe by a preponderance of the evidence that the defendant at any time or upon the completion of the plaintiff's contract failed to make actual measurements of the work done by plaintiff so as to ascertain the true amount that plaintiff was to receive for said work, and that it became necessary for the plaintiff to have the work measured in order to determine the yardage for which he was to receive compensation, and that the sum of $632.72, charged by the plaintiff as engineer's expenses in making this measurement, is reasonable, then they will find for the plaintiff the amount claimed by him for this item or such amount as the jury may believe from a preponderance of the evidence is reasonable.

"6. The court instructs the jury that if they believe from a preponderance of the evidence that the excavation work done by the plaintiff for the defendant under the contract for which he was to receive compensation was to be determined by actual measurements, and further believe by a preponderance of evidence that the quantity of material removed by the plaintiff under

---

have the additional one and one-half (1½) miles of branch railroad constructed by the contractor, this work must be completed within seven months (7) from this date.

"82. And the corporation does promise and agree to pay to the said contractor as maximum prices for the work done and material to be furnished by him under this agreement as follows:

"Excavation all classes per cubic yard, $.60 cts.

"It is agreed and understood that the price paid for excavation shall include all clearing and grubbing, unloading and putting into place all the concrete, or other, culvert, pipe incident to the work to be done hereunder."

and by virtue of his contract with the defendant was not correctly fixed and determined by the estimates and measurements made by the defendant company and its engineer, and that the quantity removed by the plaintiff was in excess of the quantity determined by the estimates and measurements made by defendant's engineer, then they will find for the plaintiff such an amount on this item as they believe he has shown by a preponderance of the evidence that he did remove in excess of the amount claimed by the defendant to have been removed by him, and calculate this excess at the price of sixty cents per cubic yard as fixed in the contract, for all of said excess the jury may believe, by a preponderance of the evidence, was removed under and according to the price fixed by said contract.''

Instruction in certificate No. 5: ''The court instructs the jury that the grade work was done under the written contract dated June 15, 1923, between M. T. McArthur and Nora Coal Corporation, introduced in evidence, and that if they believe from the evidence that a final estimate of said grade work has been made out in accordance with the terms of said contract by Engineer Kent, who was therein designated to perform that duty, which final estimate has been introduced in evidence as estimate No. 2, then unless they believe further from the evidence that there was fraud or intentional misconduct on the part of said Engineer Kent in making said estimate, they should find said estimate to be correct and binding upon both the plaintiff and defendant.''

''A. The court instructs the jury that in considering the other instructions given in this case as to measurements made, as shown by the evidence in the case, of material removed by the plaintiff in the construction of the defendant's railroad, they must not allow for

any material shown by measurements outside the lines and stakes set by George A. Kent, engineer, mentioned in the contract under which the work was to be done, or was done, the plaintiff having bound himself to make all excavations conform to the line and stakes set out by said engineer."

Instructions 5 and 6 were given for the plaintiff, while defendant's instruction mentioned in certificate No. 5 was refused, as was defendant's instruction No. 2 in the form presented, but was given as modified as follows:

"The court instructs the jury that under the written contract dated June 15, 1923, entered into between the plaintiff and defendant, the plaintiff, M. T. McArthur, agreed and bound himself to excavate or remove all material, whether dirt or rock, to the neat or prescribed sections as staked out by Engineer Kent, and the contract provides that no material taken out of the cuttings outside of the neat or prescribed sections, except slides or falls, unavoidable in the judgment of the said Engineer Kent, will be paid for, and no claim therefor will be entertained. This provision in the contract is reasonable and binding upon the parties. And the jury are instructed that if they believe from the evidence that estimate No. 2, introduced by the defendant and made by Mann and Gregory, or either of them, under the supervision of Engineer Kent, covers all excavations and are within the lines or stakes set by said Kent, they should find said estimate to be the correct estimate of the yardage removed by M. T. McArthur."

The instructions offered by the defendant and its objections to plaintiff's instructions are based upon the theory that under the provisions of the contract of June 15, 1923, engineer Geo. A. Kent had the exclusive

right to ascertain, in any manner he saw fit, the number of yards of material moved and that the parties were conclusively bound by his findings, unless it appears that he was guilty of fraud, or intentional misconduct which amounted to fraud.

But, on the other hand, the contention of the plaintiff, as manifested by the instructions offered by him and his objection to the defendant's instructions, is based upon the theory that under the contract of June 15, 1923, plaintiff was entitled to compensation at the rate of sixty cents per cubic yard for the material removed in making the excavation, except such as in the judgment of the engineer was shot down by the excessive use of explosives or through negligence, and that yardage to be paid for, whether ascertained by Chief Engineer Kent, or otherwise, was to be ascertained by *actual measurements made upon the ground;* and that the contract does not make the measurements of Engineer Kent final and conclusive.

■ Section 4 of the contract provides for a monthly *estimate* of material delivered and labor performed.

Section 5 provides, that when the work is completed the chief engineer of the corporation shall give the contractor a certificate showing the completion of the work according to specifications and that the balance due the contractor, including the ten per cent retained upon monthly estimates by the corporation, shall be paid to the contractor.

Section 7 provides that all controversies of every character which may arise between the contractor and the corporation in connection with the work to be done under the contract shall be submitted to arbitration.

Section 14 provides, that the amount due for work done shall be *"determined by actual measurement."*

Section 16 provides that all grading, except otherwise specified, whether fills or cuts, *"will be measured"* and paid for in excavation only."

Section 26 provides, "all slides and falls from sides of cuttings outside the limits of slope stakes will be paid for at the contract price for excavation, when in the judgment of the engineer they are unavoidable * * *." This section further provides that no material taken out of the cuttings outside of the prescribed section, except slides or falls unavoidable in the judgment of the engineer, will be paid for; that all slides and falls from the sides of cuttings which in the judgment of the engineer are caused by the excessive use of explosives, or for any other cause for which the contractor is responsible, must be removed at his own expense.

Section 72 provides that "no constructive or conventional measurement will be allowed, any rule or custom in the section of the country through which the road passes notwithstanding."

Section 80 provides that the work shall be done under the direction of the chief engineer of the corporation, and that his "decision as to the true construction, meaning and effect of all *drawings* and *specifications shall be final."* (Italics ours.)

█ Under the terms of the contract, fairly construed, the work was to be paid for per cubic yard, to be *determined by actual measurement.* The decision of the corporation's engineer as to yardage to be paid for is not fixed and conclusive upon the parties. In case of a disagreement, the parties had a right to resort to arbitration. Failing in an effort to arbitrate their differences, and the engineer refusing to make an actual measurement of the material removed, the contractor had the right to demand of the engineer his ground

line notes and to make a measurement for himself and leave it for the jury, under proper instructions from the court, to say what the correct amount of yardage was.

There is evidence upon which to base the instructions granted over the objection of the defendant. When read together, the instructions granted fully and fairly informed the jury as to the law applicable to the case, and we find no reversible error in the action of the court in giving or refusing instructions.

The next assignment is based upon the court's refusal to exclude the testimony of Engineer J. H. Thomas, and all drawings and measurements made by him, and permitting him to testify from his measurements and cross section sheets to the total yardage removed on the three and one-half miles of road.

The yardage testified to by Thomas was based upon his actual measurements on the ground, and an actual measurement of the rock, whether it broke inside of slope stake lines, or outside thereof. There was a difference of nearly nine thousand yards between the total yardage shown by the actual measurements of Thomas and the total yardage as ascertained by Engineer Kent. We think the evidence was properly submitted to the jury.

The sixth assignment involves the action of the court in refusing to permit James W. Gerow, a witness for the defendant, to state that after the completion of the work by the plaintiff and before the survey made by Thomas, defendant removed about 8,000 cubic yards of slides at a cost of $5,731.60.

The Thomas survey covered only the three and one-half miles on which there were practically no dirt slides. The evidence sought to be introduced included the numerous dirt slides and cuts on the one and one-

half miles which were not involved in this controversy. To admit evidence of the yards of dirt removed from both the three and one-half and the one and one-half miles, as a whole, could serve only to confuse the jury.

The seventh assignment challenges the action of the court in permitting witnesses Thomas and Speights to testify to the usual custom of measuring.

The record does not sustain the statement that they testified as to the custom of measuring, in violation of the terms of the written contract. As a sufficient further reply to this assignment, we adopt the language contained in brief of defendant in error at page 30: "This assignment in our opinion 'sticks in the bark.' There is no question made in this case about classification of material, and the evidence of witness Speights and of the witness Thomas, which was not objected to, and other witnesses as to the proportions of rock as compared with earth excavation, was introduced for the purpose of showing two things—first, what percentage of the work might, under ordinary rules of construction and in the nature of the material in which it was done, be expected to vary from the theoretical slope stake lines, and second, to show whether there had been any considerable amount of slides from the work which was measured by Thomas, to-wit, the rock cuts. Thomas testified that he only measured rock cuts and that there were no slides of any consequence in rock cuts; that there was evidence of slides in the dirt cuts but that they were not included in the measurements because he did not measure the dirt cuts. This evidence was competent to show that on most of the work there were no slides."

There is no merit in this assignment.

The eighth assignment is the refusal of the court

to exclude all evidence relative to what per cent of the yardage removed was rock and what per cent was dirt.

If it be admitted that the evidence was immaterial, its introduction did not so prejudice the rights of the defendant as to entitle it to a new trial.

■ The ninth assignment is based on the court's action in refusing to exclude the evidence concerning the laying of the tracks under the contract of February 7, 1924.

The defendant claimed an off-set for delay in completing the grade work. The plaintiff's defense was that defendant entered into a contract with plaintiff, before the grading was completed, to lay the track, but failed to furnish the track material on time as it had contracted to do, and thus made it impossible for him to complete the grade work on time. There is no merit in this assignment.

The tenth assignment is that the court erred in overruling the motion to set aside the verdict because the jury made a mistake in figuring the amount of the verdict.

It is settled law in this State that as a general rule a juror cannot be called as a witness to impeach the verdict of the jury of which he was a member.

■ In *Bryan's Case*, 131 Va. 709, 109 S. E. 477, the court, speaking through Judge Kelly, said: "It is not necessary for us to say that there are no conceivable circumstances under which the testimony of the jurors themselves may be resorted to in order to impeach their verdict."

In *Street* v. *Broaddus*, 96 Va. 825, 32 S. E. 467, Keith, P., speaking for the court, said: "It is contended, however, by plaintiff in error that we can look to the affidavits of the jurors to show that damages were not allowed. There may be occasions when, in

order to prevent a failure of justice, it is proper to consider the affidavits of jurors as to manner in which they arrived at their verdict, but the general rule, as established by the decisions of this court, is otherwise, nor does this case come within any of its exceptions."

In *Manor* v. *Hindman*, 123 Va. 767, 97 S. E. 332, Judge Prentis, speaking for the court, where the jury was guilty of misconduct in the jury room, said: "It has long been settled in Virginia that such affidavits are received with caution, and only in exceptional cases, in order to prevent a failure of justice. The record discloses nothing which takes this case out of the established rule."

■ In the instant case, the affidavits of two of the jurors were filed in support of the motion to set aside the verdict of the jury, and the affidavits of the remaining five jurors were filed to sustain the verdict as returned by the jury.

Assuming, without deciding, that it was proper for the court to consider the affidavits of the jurors, it appears by a preponderance of the testimony that the jurors did not make any mistake in arriving at their verdict, and that they reached their final conclusion in a lawful manner.

The two remaining assignments of error are based upon the court's refusal to set aside the verdict of the jury and enter judgment for the defendant.

■ There is evidence tending to prove the following facts: Engineer Kent did not make an actual measurement of the yardage, as required by the written contract, and refused to let any person see his original ground line notes until compelled to do so by the court. His refusal to let any one representing McArthur see these notes occasioned a delay of about two years before Thomas, who was acting for McArthur,

could make the measurements. A measurement can be made in rock work as well two years after as immediately upon its completion. Thomas measured only the material removed in the rock cuts of the three and one-half miles, and adopted Kent's figures as to dirt cuts which might have slid during the two years. There were few dirt cuts in the three and one-half miles. According to Thomas' measurements actually made upon the ground, Kent failed to measure 8,248 cubic yards of material removed by McArthur.

Upon the question of the amount of yardage, the evidence was conflicting, and it was for the jury to say whose contention was right. They have found for the plaintiff and there is evidence to support their verdict, which is conclusive here.

## UPON REHEARING.

Absent, West, J.

PER CURIAM: All of the members of the court who participated in the former decision in this case, November 15, 1928, 145 S. E. 366, 370, concurred in granting the prayer for a rehearing of the case. This was because we were then in grave doubt as to whether our statement of the facts and conclusion in passing upon the sixth assignment of error were correct. This is the statement in the original opinion:

"The sixth assignment involves the action of the court in refusing to permit James W. Gerow, a witness for the defendant, to state that after the completion of the work by the plaintiff, and before the survey made by Thomas, defendant removed about 8,000 cubic yards of slides, at a cost of $5,731.60.

"The Thomas survey covered only the three and

one-half miles on which there were practically no dirt slides. The evidence sought to be introduced included the numerous dirt slides and cuts on the one and one-half miles which were not involved in this controversy. To admit evidence of the yards of dirt removed from both the three and one-half and the one and one-half miles, as a whole, could serve only to confuse the jury."

That doubt, after argument and upon further consideration, has become a certainty. The record shows that the chief controversy arose over the contract of June 15, 1923, and the three and one-half miles of railroad therein referred to. It is clearly shown that Thomas only surveyed the work in dispute. He stated that he only surveyed and measured the three and one-half miles. The controversy being thus limited, the question as to the admissibility of the testimony referred to, which we are now considering, is thus presented by the record:

Gerow being on the stand was asked:

"Q. After McArthur moved away from the work, state to the jury what amount, if anything, you paid for removing slides along the road, and prior to the time the survey was made by Mr. Thomas?

"Mr. Skeen: We object to anything that was done after McArthur finished and the job was accepted, it don't make any difference.

"Mr. Flanagan: They come along and make a survey after the work had been completed by McArthur, and he said he surveyed everything in sight; now we want to prove that during the period between the time McArthur left and the time Thomas made the survey that numerous slides came in and they were removed by the company.

"Mr. Skeen: Mr. Thomas testified that he made no calculation of any dirt moved beyond the slopes in dirt, and Mr. Kent swore there were no slides in the rock work."

Then Thomas was recalled, and testified as to survey and measurements which he made, clearly referring to the three and one-half miles. Then the witness Gerow was immediately recalled, and this appears:

"Q. About how much yardage do you think you had removed from these slides?

"Mr. Simmons: Objected to.

"The court: I don't think it is necessary for him to state; it would not affect the proper measurement.

"Mr. Flanagan: We except, and avow the witness will state about 8,000 yards.

"Q. I will ask you if you removed after McArthur moved away as much as 5,000 yards from slides?

"Mr. Simmons: Objected to. Objection sustained and defendant excepts.

"Mr. Flanagan: We avow the witness will answer around 8,000 yards.

"Q. I will ask you after McArthur moved away if you removed from along that railroad as many as 8,000 yards that had slipped in?

"Mr. Simmons: Objected to. Objection sustained and defendant excepts.

"The court: It depends on the measurement of the engineer in this case?

"Mr. Flanagan: We except and avow the witness will answer around 8,000 yards.

"Q. I will ask you, Captain, to state to the jury how much it cost you in dollars and cents to remove these slides after McArthur left and before Thomas made his survey?

"Mr. Simmons: Objected to. Objection sustained and defendant excepts and avows that defendant would state $5,731.60."

It is impossible to read this testimony, when considered in connection with the other evidence in the case, and not reach the conclusion that the defendant, Nora Coal Corporation, was offering the witness, Gerow, to prove that dirt had been removed from the three and one-half miles of road to which the contract of June 15, 1923, referred. The question to Gerow should, of course, have limited him to this area and contract. The most unfavorable view that could be taken of the matter against the defendant was that it sought to prove that at least some of the dirt then referred to came from the three and one-half miles. If it could be fairly inferred that the defendant was in fact attempting to include earth which had been removed from other points on the railroad, it was nevertheless clearly evident that he was offering to prove that some of it had been removed from the three and one-half miles of road referred to. To exclude the entire testimony without having this point clarified was erroneous. It was error that was clearly harmful. The defendant company was entitled to have the jury consider the proffered testimony of this witness Gerow, together with all the other relevant testimony in the case, in order properly to determine the issues of fact raised.

For the reasons we have indicated, we think its exclusion requires the reversal of the case.

The judgment will, therefore, be reversed, and the case remanded for a new trial and for further proceedings according to law.

*Reversed.*